UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID S. H.
Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
Defendant.

CASE NO. 2:25-cv-00837-TL

ORDER REVERSING THE COMMISSIONER AND REMANDING THE CASE

Before the Court is Plaintiff David S. H.'s Complaint for Judicial Review of the denial of his applications for disability insurance benefits and for supplemental security income. Dkt. No. 4 (Complaint). Having reviewed Plaintiff's opening brief (Dkt. No. 8), Defendant Commissioner of Social Security's response brief (Dkt. No. 10), and the relevant record, the Court REVERSES the Commissioner's final decision and REMANDS for further proceedings under 42 U.S.C. § 405(g).

## I. BACKGROUND

Plaintiff is currently 39 years old, has at least a high school education, and has worked as

a customer service representative. Dkt. No. 6-2 at 30 (AR 29). On July 19, 2021, he applied for benefits, alleging disability as of February 1, 2020. *Id.* at 18 (AR 17). Plaintiff's disability applications were denied initially and on reconsideration. *Id.* On August 12, 2024, an administrative law judge ("ALJ") conducted a telephonic hearing. *Id.* at 18 (AR 17). On August 23, 2024, the ALJ issued a decision, finding Plaintiff not disabled. *Id.* at 15 (AR 14).

To determine whether Plaintiff is disabled, the ALJ utilized the five-step disability evaluation process[1] and found:

> **Step one:** Plaintiff has not engaged in substantial gainful activity since February 1, 2020, the application date. *Id.* at 21 (AR 20).
>
> **Step two:** Plaintiff has the following severe impairments: cardiac dysrhythmias status-post pacemaker implantation; class III obesity; schizoaffective disorder, bipolar type; generalized anxiety disorder; post-traumatic stress disorder; and drug abuse. *Id.*
>
> **Step three:** These impairments did not meet or equal the requirements of a listed impairment. *Id.* at 22 (AR 21) (citing 20 C.F.R. §§ 404.1520, 416.920).
>
> **Residual Functional Capacity:** Plaintiff can perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), with some additional limitations, specifically: The claimant can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; can stand and walk, off and on, for up to 6 hours during an 8-hour workday with standard breaks; can sit for up to 6 hours during an 8-hour workday with standard breaks; should never climb ladders or scaffolds; can frequently balance, stoop, kneel, crouch, crawl or climb ramps or stairs; can avoid ordinary workplace hazards, but should have no more than occasional exposure to hazards such as unprotected heights, or dangerous, unguarded machinery; can tolerate only occasional use of vibrating power tools; can understand, remember, carry out, and maintain pace for unskilled work tasks; can tolerate ordinary levels of supervision in the customary workplace, and can tolerate occasional interaction with co-workers and the general public; can maintain adequate focus, attention, and concentration to perform unskilled work; can adapt adequately to ordinary changes in an unskilled work setting. *Id.* at 23–24 (AR 22–23).

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920.

> **Step four:** The demands of Plaintiff's past relevant work exceed the limitations identified in the residual functional capacity. Dkt. No. 6-2 at 30 (AR 29). Accordingly, Plaintiff is unable to perform past relevant work as actually or generally performed. *Id.*
>
> **Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, he is not disabled. *Id.*

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. *Id.* at 2 (AR 1).

## II. Legal Standard

### A. Standard of Review

The Court will reverse the ALJ's decision only if the ALJ applied the wrong legal standard or if the decision is not supported by substantial evidence in the record. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The ALJ is responsible for evaluating evidence, in part by resolving conflicts in medical testimony and resolving any other ambiguities that might exist. *See id.* at 1149. When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *See id*. at 1154. The Court "must consider the entire record as a whole" and may not affirm the ALJ's decision "simply by isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (*quoting Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation marks omitted)). Finally, this Court "may not reverse an ALJ's decision on account of a harmless error." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1520c(c)(2)).

### A. The "Disabled" Determination

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also Ford*, 950 F.3d at 1148 (citations omitted).

To determine whether a claimant is disabled under the definition provided in the Social Security Act (and, thus, eligible for benefits), an ALJ follows a five-step sequential evaluation pursuant to 20 C.F.R. § 404.1520(a): (1) the claimant must not be engaged in "substantial gainful activity"; (2) the claimant's impairment or combination of impairments must be severe enough to significantly limit the claimant's "physical or mental ability to do basic work activities"; (3) the claimant's impairment(s) must meet or equal the criteria of an impairment in the "Listing of Impairments" ("Listings"); (4) upon assessment of the claimant's residual functional capacity ("RFC"), the claimant must not be able to perform their "past relevant work"; and (5) the claimant must not be able to make an adjustment to other work. *Ford*, 950 F.3d at 1148–49.

If the claimant fails to make the required showing at any of these steps, the ALJ's inquiry ends, and the claimant is found to not have a disability under the Social Security Act. The burden of proof is on the claimant at steps one through four, but at the fifth step, it shifts to the Agency to prove that "the claimant can perform a significant number of other jobs in the national economy." *Id.* at 1149 (citation omitted).

## III. DISCUSSION

The Court now turns to the three errors alleged by Plaintiff. Plaintiff contends the ALJ erred by: (1) failing to properly conduct a drug abuse and/or alcoholism analysis ("DAA"); (2) rejecting Plaintiff's testimony about the severity of his mental health symptoms; and (3) discounting the medical opinions of Yun-Jun Cheng, Ph.D. and Joshua Policella, M.D. Dkt. No. 8 at 1.

**A. Plaintiff's Testimony About His Mental Health Limitations**

Plaintiff contends the ALJ erroneously discounted his testimony about the severity of his mental health limitations. *See* Dkt. No. 8 at 5. The ALJ did not find malingering and was thus required to articulate "clear and convincing reasons" to reject Plaintiff's testimony. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). The ALJ's reasons "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *see also Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017) (holding the ALJ must identify which testimony the ALJ found not credible and explain which evidence contradicted that testimony). General findings and conclusory statements without supporting evidence are thus insufficient. *See Brown-Hunter*, 806 F.3d at 494 ("This is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited.").

While ALJs need not "perform a line-by-line exegesis, . . . providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Lambert v. Saul*, 980 F.3d 1266, 1277–78 (9th Cir. 2020) (*quoting Brown-Hunter v. Colvin*, 806 F.3d at 494 (emphasis and changes in original)). "[T]o satisfy the substantial evidence standard, the ALJ must . . . explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024).

Here, in a function report completed in conjunction with his application for benefits, Plaintiff "endorsed limitations in a number of common functional limitations," including "restrictions in memory, concentration, completing tasks, understanding, following instructions,

and getting along with others." Dkt. No. 6-2 at 24 (AR 23). In that same report, Plaintiff "endorsed panic attacks, confusion, and paranoia," "alleged difficulties in his performance of self-care tasks and common household chores," and "indicated that he experienced difficulties with handling stress or changes in routine." *Id.*

The ALJ discounted Plaintiff's testimony about the severity of his mental health symptoms as "not entirely consistent with the medical evidence and other evidence on the record" (*id.* at 24 (AR 23)) but erroneously failed to specify which evidence contradicted the testimony. *See Laborin*, 867 F.3d at 1155. The ALJ's lengthy summary of Plaintiff's medical record does not constitute clear and convincing reasons for finding his testimony not credible. *See Lambert*, 980 F.3d at 1277–78.

Here, the ALJ failed to identify the specific evidence that was inconsistent with Plaintiff's testimony. When the ALJ did cite to specific evidence in the record, the ALJ frequently relied upon portions of the medical record that predated Plaintiff's alleged onset of disability as evidence of Plaintiff's lack of disability. *See, e.g.*, Dkt. No. 6-7 at 167, 172, 176, 206–07 (AR 545, 550, 554, 584–85)). But for obvious reasons, "evidence that predates the alleged onset date of disability is of limited relevance[.]" *Pacheco v. Berryhill*, 733 F. App'x 356, 360 (9th Cir. 2018).

The ALJ's improper reliance on medical evidence that predates Plaintiff's alleged onset of disability is revealed in his "paragraph B"[2] analysis at step 2. The ALJ found that Plaintiff is

---

[2] To determine whether a claimant's mental impairment meets a listing, the ALJ considers (1) whether specified diagnostic criteria ("paragraph A" criteria) are met; and (2) whether specified functional limitations ("paragraph B" criteria) are present. *See* 20 C.F.R. § 404.1520a. To meet listing 12.03, schizophrenia spectrum related disorders; listing 12.06, anxiety related disorders; or listing 12.15, trauma related disorders, a claimant who satisfies the paragraph A criteria must meet at least two of the following paragraph B criteria: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked

moderately impaired in his ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage himself. Dkt. No. 6-2 at 22–23 (AR 21–22). But in support of these findings, the ALJ cited repeatedly to points in the medical record from 2019 and 2020 that predate Plaintiff's alleged onset of disability. *See id.* (citing to Dkt. No. 6-7 at 167, 172, 176, 206–07 (AR 545, 550, 554, 584–85)).

In support of the ALJ's finding that Plaintiff has a moderate limitation in his ability to adapt or manage himself, the ALJ stated "[t]he record reflects some degree of mood liability at times" and acknowledged Plaintiff's history of suicidal ideation and treatment for schizophrenia and auditory hallucinations. *Id.* at 23 (AR 22). Yet the ALJ ultimately concluded that Plaintiff "has generally denied active suicidal ideation during the period at issue" and that his "symptoms appear to be generally well-controlled with medication." *Id.* This finding is inconsistent with the medical record.

First, the record demonstrates several periods of active suicidal, and at times homicidal, ideation, including one severe episode that prompted Plaintiff to visit the emergency department in November 2022. *See, e.g.*, Dkt. No. 6-7 at 284–85, 288, 294–96, 1139 (AR 662–63, 666, 672–74, 1517). The record also shows Plaintiff engaged in self-harm during this same period. *Id.* at 284 (AR 662); Dkt. No. 6-8 at 17, 21 (AR 1637, 1641).

Second, the record likewise demonstrates mood lability, and providers repeatedly indicate that while Plaintiff was responding well to medication for his schizoaffective disorder symptoms, he frequently encountered more severe mood swings toward the end of his treatment cycles in 2022 and 2023. *See* Dkt. No. 6-7 at 285 (AR 663) ("mood reactivity"), 287 (AR 665) ("labile

---

difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. Pt. 404, App. 1, § 12.03, 12.06, 12.15; *Jutte v. Colvin*, No. C13-921, 2013 WL 6984102, at *6 (W.D. Wash. Dec. 5, 2013).

mood . . . appears to be his baseline"), 324 (AR 702) ("I can have mood swings with motivation from high motivation to no motivation and it flips like a light switch. It can last from 2 days to 2 weeks."), 345 (AR 723) ("has some mood instability"), 373 (AR 751) ("appears to have increasing mood lability towards week 10 into his Trinza LAI"), 991 (AR 1369) ("dysphoric" affect), 1205 (AR 1583) ("Mood can flex and noted towards end of his Invega cycle."); Dkt. No. 6-8 at 89 (AR 1709) ("mood swing during past 2 cycles prior to receiving injection" and "increase in mood instability noted around end of week 9"), 108 (AR 1728) ("tends to experience mood disruption towards end of his LAI cycle"), 136 (AR 1756) ("mood swing . . . . blew off my handle"). Plaintiff further stated he has experienced multiple panic attacks and symptoms of anxiety and paranoia that rendered him unable to work at various places of employment. Dkt. No. 6-2 at 51–60 (AR 50–59); Dkt. No. 6-6 at 38–44 (AR 324–30).

In the decision, the ALJ also noted Plaintiff's work attempts. Dkt. No. 6-2 at 21 (AR 20). However, "when a claimant attempts to work but is forced to stop due to their impairment, this is considered an unsuccessful work attempt and will not show that the claimant is able to do [substantial gainful activity]." *Nathan L. v. Comm'r, Soc. Sec. Admin.*, No. C22-786, 2023 WL 3946622, at *2 (D. Or. June 12, 2023) (citing 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1)); *see also Galanos v. Astrue*, No. C10-5849, 2013 WL 1365901, at *2 (N.D. Cal. Apr. 3, 2013) ("The concept of unsuccessful work attempts was designed to provide an equitable means to disregard relatively brief work attempts that do not demonstrate sustained substantial gainful activity. . . . The earnings from an unsuccessful work attempt will not show that a claimant is able to do substantial gainful activity."). Further, a "work attempt alone is not a clear and convincing reason for the ALJ's finding that [claimant's] testimony about his pain and physical limitations was not credible." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). In fact, "an

unsuccessful work attempt may bolster a claimant's allegations of disabling pain." *Nathan L.*, 2023 WL 3946622, at *2 (citing *Lingenfelter*, 504 F.3d at 1039).

In this case, the ALJ held that "[t]he record reflects that the claimant has worked in a number of positions since the alleged onset date (AOD)"; and that "[t]wo of those jobs appear to have been at the substantial gainful activity (SGA) level," both of which "ended due to the effects of his impairments." Dkt. No. 6-2 at 21 (AR 20). As a result, the ALJ found that "each of these two jobs appear to be unsuccessful work attempts under the Act." *Id.* But the ALJ held that "[w]hile the claimant's post-AOD work activity is not found to represent substantial gainful activity at step one of the sequential evaluation process, the work activity is an indication of involvement in a range of daily activity not consistent with disability from all work." *Id.* Further, the ALJ stated that "[w]ork activity performed during any period in which an individual alleges that he or she was under a disability may demonstrate an ability to engage in substantial gainful activity." *Id.* The ALJ appears to have cherry-picked lay witness testimony and other medical evidence from the record, and to the extent the ALJ relied upon Plaintiff's unsuccessful work attempt(s) to in discredit his symptom, evidence, the ALJ harmfully erred. *See Nathan L.*, 2023 WL 3946622, at *3.

As substantial evidence does not support the ALJ's findings, the ALJ harmfully erred in rejecting Plaintiff's testimony.

**B. The Medical Opinions of Dr. Cheng and Dr. Policella**

Plaintiff contends the ALJ erred when he discounted the medical opinions of Doctors Cheng and Policella. *See* Dkt. No. 8 at 11–17.

An ALJ must consider medical opinions and articulate the persuasiveness of the opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(a)–(c)). When rejecting a treating

medical opinion as unsupported or inconsistent, the ALJ must provide an explanation, supported by substantial evidence, of how she considered the supportability and consistency factors. *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(b), c(b)(2)).

**1. Dr. Cheng's Opinion**

Plaintiff correctly asserts the ALJ erroneously discounted Dr. Cheng's opinion. *See* Dkt. No. 8 at 1, 12–15.

Yun-Ju Cheng, Ph.D., examined Plaintiff via video-conferencing and prepared a report indicating he received and reviewed: (1) a "12/28/22, Record by Liqun Zhu, MD, [who] diagnosed Plaintiff with schizoaffective disorder including depression and anxiety"; and (2) "12/19/22 and 9/2/21, Notes by Michael Martindale, Licensed Mental Health Counselor, [who] diagnosed Plaintiff with PTSD and schizoaffective disorder and generalized anxiety disorder." Dkt. No. 6-7 at 988–89 (AR 1366–67). Dr. Cheng opined that Plaintiff "demonstrated marked limitations in interaction and the ability to regulate his emotions," but the ALJ held these findings were "unsupported and unpersuasive." Dkt. No. 6-2 at 28 (AR 27). The ALJ held that Dr. Cheng's opinion was "overly reliant upon the claimant's own subjective reporting of symptoms, limitations, and personal preferences as compared to an independent review of the historical treatment records." *Id.* But the ALJ provided no citations to the record in support of this finding. *See id.* If a medical opinion is based largely upon a claimant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, however, the ALJ failed to discuss how or why Dr. Cheng's opinion was based upon Plaintiff's self-reports and, as noted above, the ALJ erred in discounting Plaintiff's testimony. *See supra* Section III.A.

The ALJ also found that "Dr. Cheng's own psychological testing of the claimant was minimal and fails to provide sufficient support for any marked limitations," and that "a finding of marked limitations does not appear to be consistent with or supported by the objective medical evidence." Dkt. No. 6-2 at 28 (AR 27). But again, the ALJ failed to explain *why* Dr. Cheng's testing was inadequate, and failed to discuss what portions of the record were inconsistent with the doctor's opinions. The ALJ held that "[i]n particular, the record reflects that the claimant has generally maintained relationships over the course of the period at issue, and has also presented with largely normal social behavior in treatment encounters, behaviors which appear to be inconsistent with a marked limitation in this area" (*id.*), but failed to cite which portions of the record support this conclusion. The Court also finds Plaintiff's abilities to have relationships with family members and friends and to engage socially with his treatment providers—all of which may involve short periods of time with people with whom Plaintiff is very familiar—is not evidence that Plaintiff can therefore consistently maintain himself on a daily and weekly basis in the workplace. *See, e.g.*, Dkt. No. 6-7 at 210, 387 (AR 588, 765); Dkt. No. 6-8 at 13 (AR 1633).

The Court accordingly finds the ALJ erroneously discounted Dr. Cheng's opinions.

**2. Dr. Policella's Opinion**

Plaintiff also correctly contends the ALJ erroneously discounted Dr. Policella's opinion. *See* Dkt. No. 8 at 1, 15–17.

Dr. Policella opined that Plaintiff requires frequent breaks during the workday to decrease symptoms, that he would be absent from work more than four days each month, and would also be significantly off-task during an average workday. Dkt. No. 6-7 at 1078, 1085–88 (AR 1456, 1463–66). The ALJ found Dr. Policella's opinions were unpersuasive as they were "not supported by sufficient objective evidence and are not consistent with the record as a whole, which documents some symptomology over time, but in the context of overall stability and a

good response to treatment." Dkt. No. 6-2 at 29 (AR 28). The ALJ provided no citations to the record in support of this finding. *See id.* The Court notes the ALJ found that in November 2023, Plaintiff indicated that he experienced panic attacks when he was around groups of four to five people; that he had low motivation and energy; that his concentration was minimal; that he had manic episode where he would not eat or sleep for days; and that he had auditory and visual hallucinations. Dkt. 6-2 at 27 (AR 26). The ALJ improperly discounted this evidence on the grounds Plaintiff maintained healthy relationships with others and that he had grossly normal affect, linear thinking, and was not suicidal. But the record indicates that Plaintiff's relationships are with family members, not with individuals in the workplace, and that Plaintiff has not claimed cognitive limitations prevent him from work. *See, e.g.*, Dkt. No. 6-7 at 210, 387, 992 (AR 588, 765, 1370); Dkt. No. 6-8 at 13, 43, 80 (AR 1633, 1663, 1700). Hence, the ALJ not only erred in failing to identify which parts of the record undercut Dr. Policella's opinions, but also erred because the record tends to support the doctor's opinion that Plaintiff's mental health symptoms impose significant workplace limitations on Plaintiff. *See, e.g.*, Dkt. No. 6-2 at 51 (AR 50) (Plaintiff put on "indefinite leave" from job at Nordstrom "due to symptoms" and panic attacks that he experienced while working); 51–53 (AR 50–52) (Plaintiff laid off from job at Rite Aid due to symptoms and panic attacks); 53 (AR 52) Plaintiff experienced panic attacks, paranoia, and auditory hallucinations while working as an Amazon game apps software tester); Dkt. No. 6-7 at 422 (AR 800) (treatment notes indicate Plaintiff was fired from a job in relation to anxiety symptoms). The ALJ further described Dr. Policella's opinion as "largely incomplete, with significant portions of the document left blank." Dkt. 6-2 at 29 (AR 28). Dr. Policella's opinion appears to have been prepared specifically in support of Plaintiff's benefits application, with that form generated by Plaintiff's counsel and later filled out by the doctor. Dkt. No. 6-7 at 1076–90 (AR 1454–68). Dr. Policella was not even the medical doctor whom Plaintiff's counsel

had originally sought an opinion from (*see id.* at 1076, 1090 (AR 1454, 1468)) (soliciting medical opinion from Liqun Zhu, M.D.), and no context was provided for how long Dr. Policella had treated Plaintiff, or how he had reached his various conclusions regarding Plaintiff's limitations. *See generally id.* 1077–89 (AR 1455–67). But this was not discussed at all by the ALJ in his decision, and, in the absence of such a discussion, the Court cannot rely upon it as grounds to discount the opinion.

Here, the ALJ made conclusions regarding Dr. Policella's medical opinion but failed to support those conclusions with substantial evidence or any citation to the record. Although an ALJ "may permissibly reject check-off reports that do not contain *any* explanation of the bases of their conclusions," such rejection must still be supported by substantial evidence. *Katie J.C. v. Comm'r of Social Security*, No. C25-5966, 2026 WL 2823578, at *3 (W.D. Wash. Sept. 21, 2026) (citation modified) (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)).

The Court accordingly finds the ALJ erroneously rejected Dr. Policella's medical opinion and on remand, the ALJ should ensure that his decision is supported with references to the treatment record.

**C. Plaintiff's Use of Drugs and Alcohol**

Plaintiff contends the ALJ erred by failing to properly conduct a DAA analysis. *See* Dkt. No. 8 at 1. Because the Court is reversing the ALJ's decision and directing the ALJ to reassess certain medical opinions and Plaintiff's testimony, and to develop the record as needed, the ALJ will necessarily also have to address Plaintiff's DAA under *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). As a result, the Court need not resolve Plaintiff's DAA claims at this point.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's final decision is REVERSED, and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ must: (1) reevaluate Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms and provide specific, clear, and convincing reasons, supported by substantial evidence, for any portions of Plaintiff's testimony that are rejected; (2) reevaluate the medical opinions and prior administrative medical findings, including the opinions of Dr. Cheng and Dr. Policella; and (3) develop the record and reassess Plaintiff's RFC based on the properly evaluated evidence as needed and proceed to the remaining steps of the disability evaluation process as appropriate.

DATED this 2nd day of November, 2026.



TANA LIN
United States District Judge